[No. F023657. Fifth Dist. Nov. 18, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
TOMMY ROYCE WILLIAMS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, only the introduction, part 2.B. of DISCUSSION, and DISPOSITION of this opinion are certified for publication.

COUNSEL

Alister McAlister, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edgar A. Kerry and Jane A. Cardoza, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THAXTER, J.—After his motion to suppress evidence was denied, appellant Tommy Royce Williams pleaded no contest to one count of possession of methamphetamine in violation of Health and Safety Code section 11377, subdivision (a), a felony. He waived jury trial on allegations that he had

suffered two prior felony convictions pursuant to Penal Code[1] section 667, subdivisions (c)-(j) and that he had served two prior separate prison terms pursuant to section 667.5, subdivision (b). The court found both strike priors and one of the separate prison term allegations to be true. The other prior prison term allegation was found not true.[2]

Appellant objected on grounds of insufficient evidence to the court's using one of the prior convictions as a strike for sentencing. He also asked the court to strike one of the priors in the interest of justice, and alternatively moved to reduce the present offense to a misdemeanor. The objection, request, and motion were all denied. Appellant was sentenced to 25 years to life in prison with 288 days' credit for time served.[3]

On appeal Williams contends the trial court erred in denying his suppression motion. He further argues that the evidence was insufficient to show one of his prior convictions was a "strike" under the three strikes law. He also raises a number of sentencing issues. We will find no error in the suppression motion ruling. We agree with appellant, though, that the prosecution proved only one prior strike conviction. Thus, the matter will be remanded for sentencing.

FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

1. *The Court Properly Denied the Section 1538.5 Motion.**

. . . . . . . . . . . . . . . . . . . . . . . .

2. *Only One of Appellant's Prior "Strike" Convictions Was Shown by Substantial Evidence.*

A. *The first degree burglary prior conviction.**

. . . . . . . . . . . . . . . . . . . . . . . . .

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

[2]The court found the prior separate prison term allegation for a 1986 first degree burglary true. The court found the prior separate prison term allegation for a 1983 assault *not* true. The clerk's minutes and probation report filed April 24, 1995, indicate the court found *both* prison priors not true. This is pure clerical error and must be corrected to reflect the lower court's order as orally pronounced at sentencing. (*In re Candelario* (1970) 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 477 P.2d 729].)

[3]The abstract of judgment reads *15* years to life. Again, this is pure clerical error and must be corrected to reflect the lower court's order as orally pronounced at sentencing. (*In re Candelario, supra,* 3 Cal.3d at p. 705.)

*See footnote, *ante,* page 1405.

## B. *The assault on a peace officer prior conviction.*

The information further alleged appellant was "on or about October 13, 1983 in the Superior Court, County of Kern, . . . convicted of a prior felony offense, to wit violation of Penal Code section 245(b) within the meaning of subdivisions (c) through (j) of Penal Code section 667."

At trial, the prosecutor offered, without objection, a certified copy of an abstract of judgment dated July 29, 1986, referring to three separate case numbers. The abstract reflects that on August 18, 1983, in case No. 26018, appellant pleaded guilty to one count of assault on a peace officer in violation of section 245, subdivision (b). It also reflected a plea of guilty to second degree burglary on October 7, 1985, in case No. 30231, and a plea of guilty to first degree burglary on June 30, 1986, in case No. 31442. He was sentenced to four years in prison on the latter conviction, and sentences in the other cases were run concurrent with that one. Also admitted into evidence was a certified copy of a section 969b packet from the State of California, Department of Corrections, consisting of a chronological history, an abstract of judgment (identical to the one above), a fingerprint card which lists appellant's offenses, and a California prison photograph of appellant. The fingerprint card, which appellant signed, indicated appellant's offenses included "ADW on P/O (245(b) PC)." There was no judicial notice taken of any part of the file for case No. 26018. The court found true the allegation that Williams had previously been convicted of "[a]ssault with a deadly weapon on a peace officer, violation of Penal Code Section 245(b), within the meaning of subdivision (c) through (j) of the Penal Code and Penal Code Section 667."

At the sentencing hearing Williams's counsel objected to use of the assault conviction as a strike. He argued at length that under section 1192.7, subdivision (c)(11), an assault on a peace officer is a serious felony only if it involves a deadly weapon or instrument, that former section 245, subdivision (b) included assaults on a peace officer "by any means likely to produce great bodily injury," and there was no substantial evidence showing that a deadly weapon or instrument was used in the assault for which Williams was convicted. The court rejected Williams's argument.

On appeal, Williams renews his argument. He points out that former section 245, subdivision (b) (now section 245, subdivision (c)) penalizes "an assault with a deadly weapon or instrument, other than a firearm, *or by any means likely to produce great bodily injury* upon the person of a peace officer or fireman . . . ." (Italics added.) Section 1192.7, subdivision (c) provides that a "serious felony" includes "(11) assault with a deadly weapon or instrument on a peace officer; . . . (23) any felony in

which the defendant personally used a dangerous or deadly weapon . . . ." According to appellant, no evidence before the trial court showed that a deadly weapon or instrument was used in the assault upon a peace officer for which he was convicted. Thus, the conviction does not fall within the provisions of section 1192.7 and is not a "serious felony," hence not a strike.

Before determining whether there was substantial evidence that a deadly weapon or instrument was used in Williams's prior offense, we must first address the premise of his argument; i.e., that a conviction under former section 245, subdivision (b) is not a serious felony under section 1192.7, subdivision (c)(11) unless the assault was made with a deadly weapon or instrument. We know of no published cases dealing with this precise issue. A recent decision concerning an analogous question, however, persuades us that Williams's premise is correct.

In *People* v. *Davis* (1996) 42 Cal.App.4th 806 [49 Cal.Rptr.2d 890], the defendant was convicted of second degree robbery with the use of a firearm, and the court found he had two prior convictions of a serious felony. One of the priors was based on the defendant's guilty plea to an information charging him with violating section 245, subdivision (a)(1), " 'ASSAULT GREAT BODILY INJURY AND WITH DEADLY WEAPON.' " The information specifically alleged that the assault was committed " 'with a deadly weapon, to wit, HANDS, and by means of force likely to produce great bodily injury.' " (42 Cal.App.4th at p. 812.) The question on appeal was whether the phrase "personal use of a dangerous or deadly weapon" in section 1192.7, subdivision (c)(23) encompassed an assault committed with the hands. (42 Cal.App.4th at p. 815.)[8]

The Second Appellate District, Division Seven, concluded that ". . . one equipped only with his naked hands or fists does not 'personally use a dangerous or deadly weapon' under . . . section 1192.7, subdivision (c)(23) . . . ." (42 Cal.App.4th at p. 820.) In reaching its conclusion, the court relied on the usual, ordinary, and commonsense meaning of "weapon." (*People* v. *Davis, supra,* at pp. 815-816.) It also traced the statutory language used in section 1192.7, subdivision (c)(23) through various legislative enactments dating back to 1927 and concluding with the addition of section 1192.7 by voter approval of Proposition 8 in 1982. (42 Cal.App.4th at pp. 816-317.) The court also relied on reasoning used in other cases, including *People* v. *Equarte* (1986) 42 Cal.3d 456, 465-466 [229 Cal.Rptr. 116, 722 P.2d 890]. (*People* v. *Davis, supra,* at pp. 817-820.)

---

[8]The court noted that ". . . whether [defendant] can commit a public offense of assault with a deadly weapon with his hands presents an interesting issue of first impression, but one this court does not have to reach." (*People* v. *Davis, supra,* 42 Cal.App.4th at p. 815.)

A concurring opinion summarized "the essence of the matter" in language which is particularly pertinent to the issue before us:

"Since 1872 . . . section 245 has made two quite different kinds of assaults—felony assaults. Assaults 'with a deadly weapon or instrument' are a felony assault. So also are assaults *without* a deadly weapon or instrument but by 'means of force likely to produce great bodily injury.' Either type of assault may result in a felony conviction of . . . section 245, subdivision (a)(1).

"At issue is whether or not the phrase 'any felony in which the defendant personally used a dangerous or deadly weapon' (. . . § 1192.7, subd. (c)(23)) includes *both* types of felony assault described in . . . section 245, those committed with a weapon *and* those committed *without* a weapon.

"I agree the most reasonable interpretation is that . . . section 1192.7, subdivision (c)(23), insofar as it applies to felony assaults, refers only to those committed *with* a weapon.

"If the intent of . . . section 1192.7, subdivision (c)(23) was to include *both* types of felony assault, those with and those without weapons, less apt language can hardly be imagined. Moreover, if such was the intent, apt language was at hand: the disjunctive language of section 245, subdivision (a)(1).

"By restricting the scope of . . . section 1192.7, subdivision (c)(23) to any felony where 'the defendant personally used a dangerous or deadly weapon' the drafters clearly exempted less serious felonies where, e.g., a defendant falsely *claimed* to have a deadly weapon and those where he used a *non*dangerous 'weapon.' It also exempted, as here, a felony where *no* weapon was used." (*People* v. *Davis, supra,* 42 Cal.App.4th at pp. 820-821 (conc. opn. of Woods (Fred), J.).)

The same reasoning applies here. Section 245, subdivision (a)(1), which the *Davis* court considered, read in pertinent part: "(a)(1) Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury . . . ." At the time of Williams's 1983 offense, section 245, subdivision (b) read in pertinent part: "(b) Every person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or fireman . . . ." Under each statute, a conviction could be supported by evidence of an assault with a deadly weapon or instrument, other than a firearm, *or* by means likely to produce great bodily injury.

The language used in section 1192.7, subdivision (c)(23) makes a conviction under section 245, subdivision (a)(1) a serious felony only if a deadly

weapon is personally used by the defendant. (*People* v. *Equarte, supra,* 42 Cal.3d at p. 466; *People* v. *Davis, supra,* 42 Cal.App.4th at p. 820.) Section 1192.7, subdivision (c)(11) differs only slightly in its pertinent language from that used in subdivision (c)(23). The former applies to a specific type of assault on a specific type of individual which does not necessarily entail personal use of a weapon, as is required under section 1192.7, subdivision (c)(23). (*People* v. *Arwood* (1985) 165 Cal.App.3d 167, 173 [211 Cal.Rptr. 307].) The only other difference is that subdivision (c)(11) refers to "a deadly weapon or instrument" while subdivision (c)(23) refers to "a dangerous or deadly weapon." We see no significance in this slight variation in wording. What is significant is that neither subdivision (c)(11) nor subdivision (c)(23) includes language describing convictions based on use of means likely to produce great bodily injury, but without use of a deadly or dangerous weapon or instrument. (See *People* v. *Davis, supra,* 42 Cal.App.4th at p. 821 (conc. opn. of Woods (Fred), J.).) We conclude that unless there is substantial evidence that Williams's assault conviction was based on use of a deadly weapon or instrument, either personally or by an accomplice, it cannot be treated as a serious felony for purposes of the three strikes law.

 According to the Supreme Court in *People* v. *Guerrero* (1988) 44 Cal.3d 343, 355-356 [243 Cal.Rptr. 688, 748 P.2d 1150], the court may look to the entire record in determining whether a conviction under former section 245, subdivision (b) is in fact an assault with a deadly weapon or instrument on a peace officer (§ 1192.7, subd. (c)(11)). As noted earlier, the record presented to the court here consisted of an abstract of judgment and a section 969b packet comprised of several certified documents from the Department of Corrections.

Williams argues the abstract of judgment fails to convey the true and complete nature of the prior because it does not show whether a deadly weapon or instrument was used. Respondent does not dispute this contention, and we agree with it. The abstract of judgment merely reflects that Williams was convicted of violating section "245(b) . . . Assault Pea.Ofc." without any indication that a weapon was or was not involved.

The only other evidence which could possibly support a finding that a weapon was used in the assault was a notation on the Department of Corrections fingerprint card: "Ct. 1B, ADW on P/O (245(b) PC) (Prob Rev) CC." During the sentencing hearing the trial court referred to that notation, saying "ADW, which means—I translate to mean assault with deadly weapon."

The question then is whether the fingerprint card notation, as interpreted by the trial court, is substantial evidence of the deadly weapon element. We conclude it is not.

■ The definition of substantial evidence in a criminal case is a familiar one. It is "evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *People* v. *Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643].)

■ A trier of fact is entitled to draw reasonable inferences from certified records offered to prove a defendant suffered a prior conviction and served a prison term. (*People* v. *Haney* (1994) 26 Cal.App.4th 472, 475 [31 Cal.Rptr.2d 547].) ■ Here the trial court's inference that the fingerprint card notation "ADW" was a shorthand reference to "assault with a deadly weapon" appears reasonable. Our concern, however, is with the further inferences that whoever made the notation meant to differentiate between the two types of conduct which violate former section 245, subdivision (b)—use of a deadly weapon or instrument extrinsic to the perpetrator's body or by means likely to produce great bodily injury—and had sufficiently reliable information upon which to make that differentiation. In our opinion these further inferences are not of "solid value" for two reasons.

First, the fingerprint card is a record of the Department of Corrections, not the court in which the conviction occurred.[9] We know of no reasonable basis to believe that the Department of Corrections employee who made the notation had any information concerning the underlying conviction other than that revealed in the abstract of judgment. The abstract did not refer to use of a deadly weapon.

Second, when the question was raised at the sentencing hearing the prosecutor expressly stated he had looked at the record of the assault case "a long time ago" and although he could not remember what was used in the assault "it wasn't a deadly weapon or firearm." He later told the court that "[f]actually I don't think a gun or a knife or anything like that [was involved]." He also told the court that "I don't know what they mean by instrument [in section 1192.7, subdivision (c)(11)] and I couldn't find anything to say what they meant by instrument."

The prosecutor did not offer any evidence directly from the assault case file. (Cf. *People* v. *Reed* (1996) 13 Cal.4th 217, 223-230 [52 Cal.Rptr.2d 106, 914 P.2d 184] [preliminary hearing transcripts admissible to show personal use of deadly weapon, making prior conviction of assault under

---

[9]Section 969b allows for the introduction of certified copies of prison records to establish prima facie evidence that the defendant "has been convicted of an act punishable by imprisonment" and "has served a term therefor." Because the records were received without objection below, we need not decide whether prison records may also be admitted to prove that the conviction resulted from a specific type of conduct.

section 245, subdivision (a)(1) a serious felony].) The Attorney General describes this failure as "inexplicable." The only possible explanation we can imagine is that the prosecutor may have believed it made no difference whether Williams or an accomplice used some weapon or instrument extrinsic to the body in the assault on the peace officer—that is, that an assault with the hands or feet likely to produce great bodily injury falls within the serious felony definition in section 1192.7, subdivision (c)(11).[10] We have decided, *ante*, that such an assault does not constitute a serious felony. Thus, in order to prove the conviction was of a serious felony, it was the prosecution's burden to prove beyond a reasonable doubt that the assault involved a deadly weapon or instrument. That burden was not met here.

The true finding of the 1983 prior serious felony conviction must be stricken and appellant sentenced accordingly.

3.-7.*

. . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment of conviction is affirmed. The matter is remanded with directions to strike the finding that appellant's prior conviction of violating former section 245, subdivision (b) was a conviction of a serious felony within the meaning of section 667, subdivision (d), and to resentence appellant in accordance with the views expressed in this opinion.

Vartabedian, Acting P. J., and Wiseman, J., concurred.

---

[10]The prosecutor told the court that "I don't know if it was alleged as feet or fist or force likely to cause great bodily injury, and whether it was that way or pointing a gun at somebody." He also opined that "the reason it's specifically enumerated [in section 1192.7, subdivision (c)(11)] is not because it's assault with a deadly weapon but because it is an assault on a peace officer which makes the person perpetrating it a bit more dangerous."

*See footnote, *ante*, page 1405.