Filed 3/3/16  P. v. Michael CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>EARNEST TROY MICHAEL,<br><br>    Defendant and Appellant. | F069013<br><br>(Super. Ct. No. BF149711A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John S. Somers, Judge.

Robert Derham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Melissa Lipon, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Earnest Troy Michael was convicted of three crimes after he brutally beat his former girlfriend. The trial court also found true the allegation that he suffered a prior conviction for violation of former Penal Code section 12303.3,[1] and this crime constituted a serious felony. This prior conviction was used to enhance Michael's sentence in two ways, resulting in a total sentence of 20 years 8 months in prison.

Michael argues the trial court erred in two respects. First, he argues there was insufficient evidence that his prior conviction constituted a serious felony. Second, he asserts the trial court erred by failing to stay the sentence on one of his convictions pursuant to the provisions of section 654.

We find no merit to the second argument, but conclude there was insufficient evidence to prove the conviction for violating former section 12303.3 was a serious felony. We reach this conclusion because former section 12303.3 may be violated by various acts, some of which are serious felonies, while others are not. The prosecution failed to introduce evidence to establish the acts committed by Michael constituted a serious felony, instead essentially proving only that he was convicted. Accordingly, we will affirm the convictions, but remand the matter for a new trial on the prior conviction and, if necessary, resentencing.

## FACTUAL AND PROCEDURAL SUMMARY

The amended information charged Michael with inflicting corporal injury on a former cohabitant (§ 273.5, subd. (a)), dissuading a witness from testifying (§ 136.1, subd. (a)(1)), and severing a phone line (§ 591). Count 1 also alleged Michael personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (e), and all counts alleged Michael had: (1) a prior conviction that constituted a strike within the meaning of sections 667, subdivisions (b)–(i) and 1170.12, subdivisions (a)–(d); (2) a

---

[1]     All statutory references are to the Penal Code unless otherwise stated. This section was reenacted without substantive change as section 18740 effective January 1, 2012. (Stats. 2010, ch. 711, § 6.)

prior serious felony conviction within the meaning of section 667, subdivision (a); and (3) a prior conviction that resulted in a prison sentence within the meaning of section 667.5, subdivision (b).

The issues in this appeal do not require a detailed recitation of the underlying facts, so we will provide only a brief summary. Where additional facts are necessary to resolve an argument, they will be included within the discussion of that issue. The victim, Cathy Slate, testified that she had been in a romantic relationship with Michael, but it ended when he hit her in the face causing a black eye. She obtained a restraining order, but Michael repeatedly violated it. On the day in question, Michael was outside visiting with some of Slate's nearby neighbors when Slate went outside of her house. When Slate reentered her house, Michael followed her. Inside the house Michael attacked Slate, repeatedly striking her face with his fist. Michael also struck Slate in the face with an iron skillet several times. She had surgery to insert a metal plate from her jaw to her eye to help the bones heal. By the time of trial, the side of her face was still numb. Medical testimony established Michael broke five bones in Slate's face (two around the eye, her cheekbone, her jaw, and her nose).

Evidence presented pursuant to Evidence Code section 1109 established Michael constructed and attempted to detonate three pipe bombs at the apartment of a former girlfriend while she was sleeping. The conviction that resulted from this incident forms the basis of the prior strike and serious felony allegations.

The arguments focused on the identity of the perpetrator. The prosecution argued the evidence overwhelming proved Michael beat Slate. The defense argued Slate was not believable because she was a jilted lover, and she identified Michael to exact revenge. The jury found Michael guilty as charged, and found the great bodily injury enhancement true. Michael waived his right to a jury trial on the prior conviction enhancements, which the trial court found true. The trial court sentenced Michael to the aggravated term of four years, doubled to eight years because of the strike prior, plus five years for the great

bodily injury enhancement, and five years for the prior serious felony conviction. The sentences on counts 2 and 3 were imposed consecutively at one-third the midterm sentence. The total determinate term was 20 years 8 months in prison.

## DISCUSSION

### *Prior Serious Felony Enhancement*

Michael argues the trial court erred in determining that his prior conviction for violating former section 12303.3 was a serious felony. The prosecution alleged in the information, and the trial court found, this conviction constituted a strike pursuant to section 667, subdivisions (b)–(j), and was a serious felony within the meaning of section 667, subdivision (a). As a result of these findings, the sentence on the corporal injury count was doubled, and the trial court imposed an additional five-year enhancement.

As relevant here, former section 12303.3 makes unlawful the possession, explosion, or ignition of any destructive device or explosive with the intent to injure, intimidate, or terrify any person, or with the intent to wrongfully injure or destroy any property. The section also criminalizes the attempt to do any of the above acts.

Serious felonies are listed in section 1192.7, subdivision (c).[2] This section has numerous subparts, which identify various crimes that the Legislature has determined are serious felonies. A violation of former section 12303.3 (or current section 18740) is not now, nor was it in 2010 when Michael was convicted, listed as a serious felony. However, subparts (15), (16) and (17) of this section address explosive devices without specifically enumerating former section 12303.3. Subpart (15) makes "exploding a destructive device or any explosive with intent to injure" a serious felony. Subpart (16) makes "exploding a destructive device or any explosive causing bodily injury, great

---

**2**    All references to subpart in this opinion refer to the subparts of section 1192.7, subdivision (c).

4.

bodily injury, or mayhem" a serious felony. Subpart (17) makes "exploding a destructive device or any explosive with intent to murder" a serious felony. Accordingly, for a crime to be a serious felony under these subparts, the prosecution must prove two elements: (1) the explosive device exploded and (2) the perpetrator either had the specific intent described in subparts (15) and (17), or the explosion caused bodily injury as described in subpart (16). Michael argues the evidence presented at the trial on his prior conviction was insufficient to establish either of these elements.

To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances true beyond a reasonable doubt. (*People v. Maury* (2003) 30 Cal.4th 342, 403.) The record must disclose substantial evidence to support the verdict or finding—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Id.* at p. 396.) In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier of fact could reasonably have deduced from the evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480.) A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict or finding. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

The prosecutor presented the testimony of three witnesses at the jury trial for the assault on Slate (hereafter the jury trial), which addressed the incident that led to the prior conviction for violation of former section 12303.3. This testimony was presented as evidence of a prior act of domestic violence pursuant to the provisions of Evidence Code section 1109. This testimony established that Michael placed three pipe bombs made from plastic pipe in front of the bedroom window of his former girlfriend. Michael packed roofing nails around the bombs and attempted to detonate the bombs, but was

5.

unsuccessful, with only one bomb partially exploding.  No one was injured in the incident.

Since this testimony established no one was injured in the attempted bombing, the prosecutor must have relied on either subpart (15) or (17) to argue the prior conviction was a serious felony.  Moreover, if we could consider the testimony presented in the jury trial when determining whether substantial evidence supports the trial court's conclusion that the violation of former section 12303.3 was a serious felony, we would reject Michael's argument on the element of intent since this evidence overwhelmingly established his intent was, at a minimum, to injure his former girlfriend.  However, neither this court nor the trial court may consider the evidence from the jury trial in deciding if the prior conviction arising from the attempted bombing was a serious felony. (*People v. Trujillo* (2006) 40 Cal.4th 165, 180 [the trial court may only look to the entire record of a prior conviction in determining the nature of that crime].)

In the bifurcated court trial for the serious felony enhancement, the prosecutor introduced into evidence three documents to prove the former section 12303.3 conviction arising from the bombing incident was a serious felony.  The first document was an abstract of judgment.  The abstract of judgment identifies the conviction as a violation of former section 12303.3, and describes the crime as "USE/ETC EXPLOSIVE/DESTRUCT."  The second crime listed on the abstract is a violation of sections 664 and 273.5, subdivision (a), and is described as "ATTEMPT TO INFLICT CORPO."  Each crime was committed in 2007.

The second document presented by the prosecutor was a certified copy of the CLETS report of Michael's prior convictions.  As relevant here, this document indicates that Michael was charged with violating:  (1) former section 12303 ("POSSESS DESTRUCTIVE DEVICE"), (2) attempted section 187, subdivision (a) ("MURDER"), (3) section 12308 ("USE DEST DEVICE WITH INTETNT TO MURDER").  This document also indicates Michael was convicted of violating:  (1) former section 12303.3

6.

("USE/ETC EXPLO/ETC/DVICE:INT:INJ/ETC") and (2) attempted section 273.5, subdivision (a) ("INFLICT CORPORAL INJ SPOUSE/COHAB"). The counts for use of a destructive device with intent to murder, and attempted murder were "DISMISSED/ FURTHERANCE OF JUSTICE."

The final document introduced by the prosecutor was a mugshot profile of Michael, which lists the charges as violation of (1) section 12308 ("F USE DESTRUCTIVE DEVICE WITH IN …"), (2) former section 12303 ("F POSSESS DESTRUCTIVE DEVICE"), and (3) section 664/187 (no description of the crime).

The matter was submitted by both parties on the documents. The trial court found Michael was convicted of a serious felony that constituted a strike and sentencing enhancement. The issue is whether this evidence was sufficient to establish both elements of subparts (15) or (17), i.e. was the evidence sufficient to establish that an explosive device exploded and that Michael acted with the requisite intent.

We begin with the first element, whether there is sufficient evidence the explosive device exploded. Former section 12303.3 could be violated by mere possession of an explosive device with the required intent. Accordingly, we may not infer from the conviction itself that Michael caused an explosive device to explode. The People agree with this conclusion, but argue the term used to describe the crime in the abstract of judgment establishes the explosive device exploded. The abstract of judgment describes the violation as "USE/ETC EXPLOSIVE/DESTRUCT." Although difficult to understand, the People appear to argue that any use of a destructive device necessarily implies that something more than mere possession occurred. And since the other acts described in former section 12303.3 (explosion, ignition, or attempt to explode or ignite a destructive device) would all qualify as "exploding a destructive device" as that term is used in subpart (15), the trial court properly inferred from the abstract that the explosive device exploded.

We disagree.  We begin with *People v. Delgado* (2008) 43 Cal.4th 1059 (*Delgado*), which explains the use to which an abstract of judgment may be put in these circumstances.  Delgado was convicted of various offenses arising out of a theft from a grocery store.  The information alleged Delgado had suffered a prior conviction for violation of section 245, subdivision (a)(1), which constituted a prior serious felony conviction within the meaning of section 667, subdivisions (a)(1) and (b)–(i), i.e. the prior conviction was both a strike and qualified Delgado for a five-year sentence enhancement.  (*Delgado*, *supra*, at p. 1064.)  The parties agreed that a violation of section 245, subdivision (a)(1), could be committed in two ways, either by committing an assault while using a deadly weapon, or by committing an assault by means likely to produce great bodily injury.  (*Delgado*, *supra*, at p. 1065.)  The parties also agreed that an assault with a deadly weapon was a serious felony pursuant to section 1192.7, subdivision (31), while an assault committed by means likely to produce great bodily injury was not a serious felony.  (*Delgado*, *supra*, at p. 1065.)

The prosecution relied on various certified documents to establish the prior conviction was a serious felony, including the abstract of judgment.  The issue before the Supreme Court was whether the abstract of judgment adequately identified the crime committed by Delgado as assault with a deadly weapon, and not assault by means likely to produce great bodily injury.

The Supreme Court began by observing it was the prosecution's burden to prove each element of the alleged enhancement beyond a reasonable doubt, and the trial court may rely on admissible evidence from the entire record of conviction where a prior conviction can be committed in multiple ways, only some of which are serious felonies.  (*Delgado*, *supra*, 43 Cal.4th at pp. 1065–1066.)  The trier of fact was also entitled to draw reasonable inferences from the certified records offered to prove the prior conviction.  (*Id*. at p. 1066.)  "However, if the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose

8.

how the offense was committed, a court must presume the conviction was for the least serious form of the offense. [Citations.] In such a case, if the statute under which the prior conviction occurred could be violated in a way that does not qualify for the alleged enhancement, the evidence is thus insufficient, and the People have failed in their burden. [Citations.]" (*Ibid.*)

The Supreme Court next discussed several cases that had addressed the issue, including *People v. Rodriguez* (1998) 17 Cal.4th 253 (*Rodriguez*) (abstract of judgment insufficient because it contained abbreviated but accurate form of § 245, subd. (a)(1)'s general language), *People v. Luna* (2003) 113 Cal.App.4th 395 (*Luna*) (abstract of judgment sufficient when it described the crime as "ASSLT GBI W/DLY WPN"), *People v. Banuelos* (2005) 130 Cal.App.4th 601, 606 (*Banuelos*) (abstract of judgment describing the offense as "ASSAULT GBI W/DEADLY WEAPON" insufficient because it referred to both methods of violating the statute (disagreeing with *Luna*)), and *People v. Williams* (1996) 50 Cal.App.4th 1405 (*Williams*) (abstract of judgment insufficient because it did not indicate whether the defendant's conviction for violating § 245, subd. (c) was an act constituting a serious felony where statute could also be violated in a manner that was not a serious felony).[3] (*Delgado*, *supra*, 43 Cal.4th at pp. 1067–1069.) The Supreme Court concluded from these cases that an abstract of judgment may be sufficient where violation of a statute is a serious felony if committed in a specific manner if the description of the crime in the abstract of judgment adequately describes how the crime was committed. However, where the description in the abstract of judgment was so ambiguous the court could not determine the manner in which the statute was violated, it was not substantial evidence of the precise factual nature of the prior conviction. (*Id*. at p. 1069.)

---

**3** *Luna*, *supra*, 113 Cal.App.4th 395 was disapproved to the extent it was inconsistent with *Delgado*. (*Delgado*, *supra*, 43 Cal.4th at p. 1073.)

The Supreme Court held that the abstract of judgment before it was sufficient. The abstract of judgment described the crime as "Asslt w DWpn," which the parties agreed stood for assault with a deadly weapon, the manner of assault that was a serious crime. (*Delgado*, *supra*, 43 Cal.4th at pp. 1069–1070.) "Unlike those at issue in *Rodriguez, Luna,* and *Banuelos* the instant abstract does not mention the other specific, discrete, and disjunctive form of section 245[, subdivision ](a)(1) violation, involving force likely to produce [great bodily injury]. And unlike the abstract at issue in *Williams*, it does not simply cite the statute violated, without any reference to the underlying conduct. Any inference that this notation simply refers to the statute generally is thus sharply diminished." (*Id*. at p. 1069.)

In this case, former section 12303.3 can be violated by possession, explosion or ignition of a destructive device. A violation of former section 12303.3 is a serious felony only if the destructive device explodes, and the perpetrator acted with the required intent. Accordingly, possession of a destructive device would not constitute a serious felony.

The question is whether the description in the abstract of judgment prepared in this case, "USE/ETC EXPLOSIVE/DESTRUCT," is specific enough to permit the inference that the destructive device exploded or ignited, as opposed to being merely possessed. We are uncertain from where the language in the abstract was obtained. Former section 12303.3 does not contain the word "use," instead focusing on possession, explosion, or ignition. Accordingly, it is impossible to know what the phrase was intended to convey when the abstract was prepared. Moreover, use of a destructive device may be interpreted in numerous ways, including many that do not require explosion of the device (e.g., the device could be used in a bank robbery to convince a bank teller to give the perpetrator money without actually exploding the device).

It seems likely the clerk who prepared the abstract of judgment was attempting to provide a general description of the crime, and was not attempting to describe Michael's actual conduct. In any event, the description is not specific enough to permit an inference

that the destructive device actually exploded. Since the abstract of judgment refers to a statute that may be violated in several ways, not all of which constitute a serious felony, the abstract of judgment itself is not substantial evidence that Michael's prior conviction was a serious felony within the meaning of subparts (15), (16) or (17).

The prosecutor also introduced the CLETS report for Michael. This report described Michael's conviction as "USE/ETC EXPLO/ETC/DVICE:INT:INJ/ETC." This description initially mirrors the abstract of judgment, but adds "INT:INJ/ETC," which we interpret to mean with an intent to injure. We share the same concerns as in *Williams* about such a notation. There is no way of knowing who added this reference, the basis for adding the reference, or whether there was any basis at all for the reference. In *Delgado* the Supreme Court noted the abstract of judgment was "cloaked with a presumption of regularity and reliability" because it was contemporaneously prepared, statutorily sanctioned, and the official clerical record of the conviction and sentence. (*Delgado*, *supra*, 43 Cal.4th at p. 1070.) "As such, 'the Legislature intended [it] to [accurately] summarize the judgment.' [Citations.]" (*Ibid.*) The CLETS report does not meet any of these requirements.

Moreover, the CLETS report, even if it were reliable, does not establish that the explosive device was actually detonated for the same reasons the abstract of judgment failed to do so. The added language appears to mirror the elements of a violation of former section 12303.3 and, thus, does not provide a description of how the crime was actually committed.

The People rely on *People v. Armstrong* (1992) 8 Cal.App.4th 1060 (*Armstrong*) to support its argument. Armstrong was convicted of violating former section 12303.3 when he filled a bottle with gasoline, put a rag in the bottle, lit the rag and then threw the device into the backyard of his girlfriend's home. The rag flew out of the bottle before the bottle hit the ground and shattered spreading the gasoline. No one was hurt and no property was damaged. Armstrong argued this conviction was not a serious felony

11.

because his intent was to injure property, not persons and, thus, did not fall within the requirements of subpart (15). The appellate court held the phrase "intent to injure" as used in subpart (15) included the intent to injure property as well as persons and, therefore, Armstrong's conviction was a serious felony. (*Armstrong*, *supra*, at pp. 1066–1068.)

*Armstrong* does not aid the People because it did not address the issue of whether the abstract of judgment in this case was specific enough to establish that Michael caused an explosive device to explode.

The People's reliance on subpart (39) does not aid its position. Subpart (39) defines a serious felony as "any attempt to commit a crime listed in this subdivision other than an assault." Under this subpart, an attempt to explode an explosive device with the required intent would be a serious felony. This argument is not persuasive because, as explained above, the abstract of judgment does not describe the crime in a manner that would allow us to infer that Michael attempted to explode an explosive device.

Since there is insufficient evidence that Michael either exploded or attempted to explode a destructive device, we need not consider Michael's alternative argument that the evidence was insufficient to prove the intent element of subpart (15). We simply note the intent a perpetrator must possess to violate former section 12303.3 is the intent to injure either persons or property (subpart (15)), the intent to cause bodily injury (subpart (16)), or the intent to murder (subpart (17)).

It is clear that a perpetrator could have the required intent to violate former section 12303.3, but not the intent required to make the crime a serious felony. For example, a perpetrator could possess or explode a destructive device with the intent to terrify a person without, theoretically, the intent to harm either a person or property, such as our bank robbery example above. Therefore, it will be incumbent on the prosecutor to

produce sufficient evidence to permit the trial court to find the necessary intent for the crime to be a serious felony.[4]

Since there is insufficient evidence to support the trial court's finding that Michael's prior conviction for violating former section 12303.3 was a serious felony, we will reverse that finding and remand the matter to the trial court for retrial of the prior conviction allegations. (*People v. Barragan* (2004) 32 Cal.4th 236, 239–259.)

***Section 654***

Michael argues the trial court erred when it imposed consecutive sentences for both the dissuading a witness count and the severing a telephone line count. He asserts that section 654 precludes imposition of sentence on both counts because they were the result of a continuous course of conduct that shared the same intent and objective.

"Section 654 precludes multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) "'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

---

**4** The People present two arguments that are not worthy of serious comment. First, they argue we should ignore the law that an objection is unnecessary to preserve a sufficiency of the evidence argument preserved for appeal (*Rodriguez*, *supra*, 17 Cal.4th at p. 262) and find that Michael forfeited the argument. Second, the People argue we should simply find the allegation true because there was ample evidence at the guilt phase of the trial to support both the explosion and intent elements of the serious felony enhancement and thereby avoid a waste of judicial resources. This request asks us to ignore *People v. Trujillo*, *supra*, 40 Cal.4th at page 180, which, as explained above, limits the evidence that may be considered when deciding whether a prior conviction is a serious felony. The People provide no reasoned argument for ignoring *Trujillo*, so we follow Supreme Court precedent, as we are required to do. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

13.

"'It is [the] defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] … [I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.]'" (*People v. Hicks* (1993) 6 Cal.4th 784, 789.) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.) And "'"a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citations.]" [Citations.] This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken. [Citation.]' [Citation.])" (*People v. Andra* (2007) 156 Cal.App.4th 638, 640.)

"The defendant's intent and objective present factual questions for the trial court, and its findings will be upheld if supported by substantial evidence." (*People v. Andra*, *supra*, 156 Cal.App.4th at p. 640.) "'We review the court's determination of [a defendant's] "separate intents" for sufficient evidence in a light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence. [Citation.]' [Citation.]" (*Id.* at pp. 640–641.)

The only testimony about these two offenses was provided by Slate. She testified that after Michael stopped hitting her, she ran towards the front door in an attempt to escape. When she realized Michael would prevent her from leaving the house, she sat on

14.

the couch. Michael grabbed her and threw her on the floor and began hitting her again. Michael was yelling at her that she could not escape and she was not going to call the police. Michael pulled Slate up by her hair and sat her on the couch. Michael kneeled in front of Slate and told her that if she called the police he would kill her, and if he was put in jail he would get someone else to kill her. Slate promised she would not call the police. Michael gave Slate a towel from the kitchen with which to clean the blood from her face and told Slate again that if she called the police after he left he would return and kill her. Michael then exited through the front door of the house. Slate stayed on the couch because she saw through the window that Michael had not left the property. Michael came back inside, grabbed the phone, threw it on the ground and destroyed it. Finally, he pulled the cord out of the wall. Michael told Slate his actions would make it more difficult for her to call the police. Michael then left the property. As soon as Michael was out of sight, Slate ran out the door seeking help for her injuries.

At the sentencing hearing, the trial court found that the dissuading a witness and severing a phone line crimes and the objectives of the crimes were predominately independent of each other. It also found the dissuading a witness count involved a separate threat of violence in addition to the assault count and should be sentenced consecutively.

While it is arguable whether Michael harbored the same intent and objective when he threatened to kill Slate if she reported the assault to the police and when he destroyed her telephone, there is substantial evidence to support the trial court's conclusion that these two crimes were predominately independent of each other, i.e., Michael's course of conduct occurred over a sufficient amount of time so as to justify separate punishment. Michael had ample time for reflection between the two acts. After Michael threatened Slate in an attempt to prevent her from reporting the crime, he walked out of the house, but did not leave the property. When outside, Michael apparently decided that to further hinder Slate's report to the police he should destroy the phone before leaving the

15.

property.  Thus, the only logical inference from these facts is that after Michael threatened Slate, and upon further reflection, he decided to destroy the phone.  This evidence amply supports the trial court's conclusion that separate punishment should be imposed for the two crimes.

## DISPOSITION

The convictions are affirmed.  The finding that Michael's prior conviction for violation of former Penal Code section 12303.3 is a serious felony is reversed, and the matter is remanded to the trial court to permit a retrial of the issue, during which the prosecution may present evidence to prove it is a serious felony, including transcripts from the preliminary hearing (*People v. Reed* (1996) 13 Cal.4th 217, 220), trial transcripts (*People v. Bartow* (1996) 46  Cal.App.4th 1573, 1582–1583), and any other relevant portion of the "entire record of the conviction" (*People v. Guerrero* (1988) 44 Cal.3d 343, 355).  Depending on the outcome of this trial, the trial court may have to resentence Michael.

_____

KANE, J.

WE CONCUR:


_____

LEVY, Acting P.J.


_____

SMITH, J.