Filed 4/26/16  P. v. Clark CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C076864 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F00475) |
| v. | |
| IAN ZACHARY CLARK, | |
| Defendant and Appellant. | |

A jury found defendant Ian Zachary Clark guilty of assault with intent to commit rape (Pen. Code, § 220—count 1),[1] sexual battery (§ 243.4, subd. (a)—count 2), assault with a deadly weapon (§ 245, subd. (a)(1)—count 3), and attempted robbery (§§ 664, 211—count 4).  The jury also found, as to count one, that defendant used a deadly weapon (§ 12022.3, subd. (a)) and, as to counts two and four, that defendant personally used a deadly weapon (§ 12022, subd. (b)(1)).

---

[1] Undesignated statutory references are to the Penal Code.

1

The trial court sentenced defendant to a total of 11 years in prison: for count one, a six-year upper term with a consecutive four-year middle term for the deadly weapon enhancement; and, for count four, a one-third middle term of eight months with a consecutive one-third middle term of four months for the deadly weapon enhancement. The court also imposed sentence on counts two and three, but stayed punishment pursuant to section 654.

On appeal, defendant contends that: (1) his convictions were not supported by substantial evidence, (2) the trial court abused its discretion in admitting evidence of a prior sexual battery committed by defendant, (3) the trial court abused its discretion by imposing an aggravated sentence on count one, and (4) the clerk's minute order from sentencing contains an error that requires correction. We order the clerk's minutes corrected to reflect the sentences orally imposed, but otherwise affirm the judgment.

## I. BACKGROUND

### A.    *The Attack*

On the evening of July 16, 2012, Natalia L. was walking home alone from American River College on a nearby trail when a man approached her from behind and asked if she had a cell phone. Natalia said she did not, but asked why he needed one. He said, "[f]or a fucking ride," and then rode ahead on his bicycle.

Natalia continued walking and saw the man again. Two or three steps after she passed him, he attacked her from behind. He wrapped his arm around her neck. Natalia struggled to get away, but the man had a knife. He told Natalia, "Shut up or I'll kill you." Then, he told her to get on her knees. She obeyed. The man stayed behind her, holding his knife to her waist as she struggled to breathe. He told her to give him her phone or her ass. He tried to pull her pants down and cut her ring finger with the knife when she did not cooperate. As they struggled, the man told Natalia that if she used her phone to call anyone, he would rape and kill her. He put his hand inside Natalia's bra and grabbed

2

her right breast.  As he did so, she got on her back and pushed him away with her legs.  He told her to run.  She did.

B.      *The Investigation*

On the night of the attack, Natalia described her attacker to Deputy Jason Hicks with the Sacramento Sheriff's Department, who was dispatched to the scene as a white male, 24 to 28 years old, 5'6" to 5'7", 180 to 200 pounds, with "short, shaved, blonde hair," possibly blue eyes, and no facial hair.[2]  She described his overall appearance as being dirty or possibly homeless.  She said his knife had a fixed blade.

On July 18, 2012, Natalia met with Detective Michelle Hendricks.  At that time, Natalia described her attacker as a white male, in his 20s, 5'7" to 6'0", with a stocky build and blue eyes.  He smelled like he had been smoking.  Detective Hendricks collected the bra Natalia had been wearing on the night of the attack as evidence.  Natalia had noted a smudge on the inside of the bra that she thought was left by her attacker.

The same day, Natalia met with a composite sketch artist from the Sacramento County Sheriff's Department.  She described her attacker as about 5'7", 200 pounds, and having blonde hair "about a one-quarter inch length, even cut."

On January 11, 2013, approximately six months after the attack, Natalia viewed a photographic lineup.  She pointed out that defendant's photograph was similar to the person who attacked her because of the hair and the shape of his face.  She told detectives that the man in the photograph looked like her attacker, but that it was not him.

When defendant met with detectives, he stated he was familiar with the trail area where Natalia was attacked.  He had never shopped at the store where Natalia purchased the bra she was wearing during the attack.  Defendant said he carried a folding knife in

[2]  At trial, Natalia testified as to her original description of her attacker.  In doing so, she said her attacker "was a bit taller than me, so 5'8" something maybe."

3

his boot and stated he smoked Marlboro cigarettes.  He was homeless and used light rail, a bicycle and walking for transportation.

At trial, Detective Hendricks testified defendant was 20 years old at the time of the attack, and he was 5'6" and 167 pounds.  Pictures of defendant from before and after the date of the attack show he had facial hair.

C.     *DNA Evidence*

Criminalist Kristin Bejarano testified that she extracted two different DNA profiles from the smudge found on Natalia's bra—a female major contributor and a male minor contributor.  Bejarano compared the DNA profiles to a reference sample provided by Natalia and concluded that the major contributor profile was the same as Natalia's sample.

Criminalist Megan Wood compared the DNA she extracted from defendant's reference sample to the male minor contributor profile that Berjarano had obtained from Natalia's bra.  The profile from the minor contributor was only partial, but Wood concluded defendant's reference profile was consistent.  She estimated the partial minor contributor profile to occur at random among unrelated individuals in approximately one in seven billion African Americans, one in one billion Caucasians, and one in 17 billion Hispanics.

## II.  DISCUSSION

A.     *Defendant's Convictions Are Supported by Substantial Evidence*

Defendant contends his convictions were not supported by sufficient evidence.  He focuses on the imperfections in Natalia's descriptions of her attacker, her statement when viewing the photographic lineup that he was not her attacker, and the fact the DNA evidence recovered from Natalia's bra was incomplete.

We "review the whole record in the light most favorable to the judgment . . . to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the

4

defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "The focus of the substantial evidence test is on the *whole* record of evidence presented to the trier of fact, rather than on ' "isolated bits of evidence." ' " (*People v. Cuevas* (1995) 12 Cal.4th 252, 261, quoting *People v. Johnson, supra,* at p. 577.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331, quoting *People v. Redmond* (1969) 71 Cal.2d 745, 755.) In other words, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055.) This is the same in cases in which the People rely primarily on circumstantial evidence. (*People v. Bean* (1988) 46 Cal.3d 919, 932.) " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" (*Id*. at p. 933.)

Defendant contends that the DNA evidence "was unreliable and inconclusive." His only support for these assertions is that the DNA evidence was partial and one inconsistent missing marker could have exonerated him. This does not make the evidence either unreliable or inconclusive. Evidence of a partial DNA profile consistent with a defendant's profile is widely accepted even without an accompanying statistical analysis. (See *People v. Her* (2013) 216 Cal.App.4th 977, 981-982 [explaining that cases from California and other states have ruled that evidence of a partial DNA profile consistent with the defendant's profile is relevant and admissible absent statistical analysis].) And here defendant ignores Wood's random match probability statistical analysis that the partial male minor contributor profile would occur at random among

5

unrelated individuals in approximately one in one billion Caucasians. This evidence was powerful and hardly inconclusive.

While Natalia's descriptions of her attacker differed in certain respects from defendant's characteristics and she did not identify him as her attacker, we must view the whole record in the light most favorable to the judgment. In doing so, we note that defendant ignores that Natalia's descriptions were at times accurate and were never wholly disqualifying of his guilt. For instance, when she stated while viewing the photographic lineup that he was not the attacker, she still said the photograph of the defendant looked like her attacker. Moreover, the inaccuracies in her descriptions and her failure to identify defendant in the photographic lineup do not undercut the DNA evidence, which strongly indicates that defendant was the attacker. Defendant's convictions were supported by substantial evidence.

**B.** *Admission of Evidence of Defendant's Prior Sexual Offense*

    *1.* *Procedural Background*

Before trial, the prosecution moved, pursuant to Evidence Code section 1108, to admit evidence that defendant committed a sexual battery in 2004. Meanwhile, defendant's counsel filed a motion in limine to exclude the same evidence. The trial court admitted the evidence after balancing its probative value against the risk of undue prejudice, confusing the issues or misleading the jury under Evidence Code section 352. The court noted that the prior offense was a sexual assault and "the similarities as to how the sexual assault took place in that case compared to how the alleged sexual assault supposedly took place in this case are probative, unusually probative, because of the similarities." The court also addressed defense counsel's main objections to the admission of the evidence—defendant's youth at the time of the prior offense and the passage of time—and found that these concerns as well as the differences between the offenses went more to "the weight the jury gives to it as opposed to whether I should give the jury the opportunity to hear about it in the first place."

6

At the close of the prosecution's case, the following stipulation was read into the record: "On September 10, 2004, the Defendant, who was 12 years old at the time, was observed removing the pants of a seven-year-old. The boy was observed to be on his knees, bent over a chair, and the Defendant was standing behind the boy restraining him. [¶] The Defendant was observed to lift up his own shirt and begin to unbutton his own pants when he was interrupted. As a result, the Defendant went to Juvenile Court and admitted a charge of misdemeanor sexual battery on January 3, 2005."

 2. *Analysis*

In general, evidence of a defendant's prior conduct is not admissible to prove the defendant's conduct on a specific occasion. (Evid. Code, § 1101, subd. (a).) But Evidence Code section 1108, subdivision (a) provides that when the defendant is charged with a sexual offense, evidence of the defendant's commission of another sexual offense is not made inadmissible by Evidence Code section 1101, if the evidence is not inadmissible under Evidence Code section 352. Accordingly, defendant contends the trial court erred by not excluding the evidence under Evidence Code section 352, which gives the trial court discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

In exercising this discretion as to a sexual offense, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta* (1999) 21 Cal.4th

7

903, 917 (*Falsetta*).) The probative value of prior sexual offense is increased by the relative similarity between the prior and current offenses, the close temporal proximity between the prior and current offenses, and the independent sources of evidence in each offense. (*Ibid.*) Meanwhile, "the prejudicial impact of the evidence is reduced if the uncharged offenses resulted in actual *convictions* and a prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the other offenses, and that the jury's attention would not be diverted by having to make a separate determination whether defendant committed the other offenses." (*Ibid.*) We review a trial court's ruling under Evidence Code section 1108 for abuse of discretion. (*People v. Loy* (2011) 52 Cal.4th 46, 61 (*Loy*).)

Much of defendant's assertion that the trial court abused its discretion in admitting evidence of the prior offense rests on his allegation of weaknesses in the prosecution's case. As discussed previously, we disagree that the prosecution's case was weak. It was in fact substantial. "But even if defendant were correct, the argument would not aid him. The supposed weakness of the rest of the case would be relevant to the question of prejudice if there were error, but it provides no reason to exclude this particularly probative evidence." (*Loy, supra,* 52 Cal.4th at p. 64.)

Defendant also emphasizes his youth at the time of the prior offense and the factual differences between the prior and current offenses. With respect to defendant's age at the time of the prior offense, he cites *People v. Cottone* (2013) 57 Cal.4th 269 (*Cottone*), and contends the prosecution did not show he appreciated the wrongfulness of his conduct. *Cottone* is inapposite because it involved unadjudicated prior conduct. (*Id.* at p. 280.) This was significant because, in order to be admissible under section 1108, the prior conduct must be a "sexual offense" amounting to a crime. (Evid. Code, § 1108, subd. (d)(1).) Penal Code section 26(One) creates a rebuttable presumption that children under the age of 14 are not capable of committing crimes except when there is "clear proof that at the time of committing the act charged against them, they knew its

8

wrongfulness." Our Supreme Court held that this presumption of incapacity "applies when the prosecution seeks to prove that the defendant committed an unadjudicated sexual offense before reaching age 14." (*Cottone, supra,* 57 Cal.4th at p. 281.) Here, defendant had admitted to the prior charge of misdemeanor sexual battery. *Cottone* is inapplicable.

We are left, then, with the factual differences between the prior and the current offenses. Even where previous crimes bear *no* similarity to the present case, that factor alone is not dispositive. (*Loy, supra,* 52 Cal.4th at p. 63.) "It is enough the charged and uncharged offenses are sex offenses as defined in section 1108." (*People v. Frazier* (2001) 89 Cal.App.4th 30, 41, disapproved on another ground in *Loy, supra,* at pp. 73-74.) And here the offenses were not entirely devoid of similarity. In each situation, defendant chose to assault his victims from behind and the victim was on his or her knees. Defendant removed or attempted to remove both victims' pants. More significantly, the factual differences between the offenses were offset by a minimal risk of undue prejudice. The jury was read a stipulation about the prior offense and told that defendant admitted the charge, "ensuring that the jury would not be tempted to convict the defendant simply to punish him for the other offenses, and that the jury's attention would not be diverted by having to make a separate determination whether defendant committed the other offenses." (*Falsetta, supra,* 21 Cal.4th at p. 917.) The stipulation was brief and thus, unlike the evidence in *People v. Harris* (1998) 60 Cal.App.4th 727, cited by defendant, not stronger and more inflammatory than the evidence concerning the charged offenses. (See *id*. at p. 738.) Under these circumstances, the trial court did not abuse its discretion in admitting evidence of defendant's previous sexual offense.

This conclusion also disposes of defendant's derivative due process clause argument. (See *Falsetta, supra,* 21 Cal.4th at p. 917 ("[T]he trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due

9

process challenge"].) Because the trial court properly weighed the admissibility of his prior offense under Evidence Code section 352, defendant's due process challenge fails.

*C.    Sentencing*

Defendant also asserts the trial court abused its discretion by imposing an aggravated sentence on count one instead of a middle-term sentence.

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (§ 1170, subd. (b).) Accordingly, we review a trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

In determining the appropriate term, the court may consider, as relevant here, the record in the case, the probation officer's report, and statements in aggravation or mitigation submitted by the prosecution or the defendant. (§ 1170, subd. (b).) Defendant's probation report indicated a number of applicable aggravating factors: The crimes involved great violence, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness; defendant has engaged in violent conduct indicating a serious danger to society; defendant's prior convictions and sustained juvenile delinquency petitions were numerous or of increasing seriousness; defendant was on informal probation when the crimes were committed. (Cal. Rules of Court, rule 4.421(a)(1) & (b)(1), (2), (4).) The report also noted two circumstances in mitigation: Defendant's prior performance on juvenile probation was satisfactory and he was only 22 years old at the time of sentencing. (Cal. Rules of Court, rules 4.408(a), 4.423(b)(6).)

At the sentencing hearing, the prosecutor noted other potentially mitigating factors before arguing that the court impose the upper term only on the first count and a total prison term of 11 years rather than the 17 years recommended in the probation report. Defense counsel asked the trial court to impose the middle term on all counts for a total of eight or nine years, depending on whether count four ran concurrently with count one.

10

"I think that is an appropriate sentence in light of [defendant's] past and in light of the conduct that the jury found true in this case."

The trial court agreed with the prosecution's recommendation and imposed a total term of 11 years, including the challenged aggravated term for count one: "I find for all of the reasons as contained in the presentence report as well as the comments of counsel here, that the upper term of six years is the appropriate placement." The trial court did not abuse its discretion in imposing an aggravated sentence on this count: "[A] single factor in aggravation suffices to support an upper term." (*People v. Osband* (1996) 13 Cal.4th 622, 730.)

Again, our conclusion that the trial court did not abuse its discretion also disposes of defendant's derivative argument that the trial court violated his due process rights by abusing its discretion.

D.      *The Clerk's Minute Order*

The parties agree that the clerk's minute order from sentencing contains an error that requires correction. The court imposed a consecutive one-third middle term of four months on the enhancement in count four, but the minute order from sentencing reflects a consecutive eight-month enhancement term. When the court's oral pronouncement of judgment conflicts with the clerk's minute order, the oral pronouncement controls. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.) Such errors in the clerk's minute order may be corrected by this court on appeal. (*People v. Williams* (1996) 50 Cal.App.4th 1405, 1408, fn. 2.) Accordingly, we order the clerk's minute order corrected to reflect the sentences orally imposed.

## III.  DISPOSITION

The judgment is affirmed.  The clerk of the superior court is directed to correct the sentencing minute order to indicate the trial court imposed a consecutive one-third middle term of four months on the enhancement in count four.

/S/

_____

RENNER, J.

We concur:

/S/

_____

NICHOLSON, Acting P. J.

/S/

_____

ROBIE, J.

12